UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                   :

ANDRES TITUS & WILLIAM MCLEAN,    :   No. 1:23-cv-00015-JLR
p/k/a "BLACK SHEEP," Individually and on  :
Behalf of All Others Similarly Situated,    :
                                     :

                    Plaintiffs,   :   **ORAL ARGUMENT REQUESTED**
                                     :

                v.             :

UMG RECORDINGS, INC.,           :
                                     :

                    Defendant.   :
-----------------------------------------------------------X

**REPLY IN SUPPORT OF DEFENDANT UMG RECORDINGS, INC.'S
MOTION TO DISMISS THE CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.     PLAINTIFFS' CLAIMS ARE TIME BARRED ...................................................................1

     A.    The Continuing Violation Doctrine Is Inapplicable................................................ 1

     B.    The Reasonable Time for Performance Doctrine Is Inapplicable........................... 2

     C.    Equitable Tolling Is Inapplicable ......................................................................... 3

II.    PLAINTIFFS CANNOT ESTABLISH A BREACH AS A MATTER OF LAW .............5

III.   PLAINTIFFS' IMPLIED COVENANT CLAIM FAILS.................................................7

IV.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS...............................................9

V.    PLAINTIFFS' CLAIMS ARE NOT RIPE .....................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affordable Housing Associates Inc. v. Town of Brookhaven*,
    49 Misc. 3d 570 (N.Y. Sup. Ct. Suffolk Cnty. 2015) ...............................................1

*ARI & Co., Inc. v. Regent Int'l Corp.*,
    273 F. Supp. 2d 518 (S.D.N.Y. 2003) ...............................................................7, 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................2

*Axon v. Florida's Natural Grower's, Inc.*,
    813 F. App'x 701 (2d Cir. 2020) ..........................................................................9

*Barash v. Estate of Sperlin*,
    271 A.D.2d 558 (2d Dep't 2000) ..........................................................................1

*Bulova Watch Co. v. Celotex Corp.*,
    46 N.Y.2d 606 (1979) ...........................................................................................1

*Dervan v. Gordian Grp. LLC*,
    No. 16 Civ. 1694 (AJN), 2017 WL 819494 (S.D.N.Y. Feb. 28, 2017) ..................9

*Doyle v. United Airlines, Inc.*,
    914 F. Supp. 2d 325 (2012) ...............................................................................3, 4

*Ellington v. EMI Music, Inc.*,
    24 N.Y.3d 239 (2014) ............................................................................................7

*Empire Fire and Marine Ins. Co. v. Edge Auto, Inc.*,
    No. 21-CV-5413 (RPK)(PK), 2022 WL 17779117 (E.D.N.Y. Sep. 15, 2022) ........9

*Greenfield v. Philles Recs., Inc.*,
    98 N.Y.2d 562 (2002) ...........................................................................................7

*Guilbert v. Gardner*,
    480 F.3d 140 (2d Cir. 2007).................................................................................1

*LiveIntent, Inc. v. Naples*,
    293 F. Supp. 3d 433 (S.D.N.Y. 2018).................................................................1, 2

*Marshall v. Hyundai Motor Am.*,
    51 F. Supp. 3d 451 (S.D.N.Y. 2014)...................................................................3, 4

*McTyere v. Apple, Inc.*,
   No. 21 Civ. 1133 (LJV), 2023 WL 2585888 (W.D.N.Y. Mar. 21, 2023) ...............................9

*Mullin v. WL Ross and Co. LLC*,
   173 A.D.3d 520 (1st Dep't 2019) .............................................................................................1

*NEM Re Receivables, LLC v. Fortress Re, Inc.*,
   187 F. Supp. 3d 390 (S.D.N.Y. 2016)........................................................................................3

*Nuss v. Sabad*,
   No. 10 Civ 279 (LEK) (TWD), 2016 WL 4098606 (N.D.N.Y. July 28, 2016).........................2

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
   830 F.3d 152 (2d Cir. 2016).......................................................................................................3

*P&G Auditors & Consultants, LLC v. Mega Int'l Comm. Bank Co., Ltd.*,
   No. 18 Civ. 9232 (JPO), 2019 WL 4805862 (S.D.N.Y. Sept. 30, 2019)................................10

*Spinelli v. Nat'l Football League*,
   96 F. Supp. 3d 81 (S.D.N.Y. 2015)............................................................................................7

*Telesco v. Neuman*,
   No. 14 CV 3480 (VB), 2015 WL 5474230 (S.D.N.Y. Sep. 8, 2015) ........................................5

*U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*,
   230 F. Supp. 3d 253 (S.D.N.Y. 2017)......................................................................................10

*Vertex Constr. Corp. v. T.F.J. Fitness LLC*,
   No. 10 Civ. 683 (CBA) (ALC), 2011 WL 5884209 (E.D.N.Y. Nov. 23, 2011) ......................9

*Zerilli-Edelglass v. New York City Transit Authority*,
   333 F.3d 74 (2d Cir. 2003)......................................................................................................3, 4

Defendant UMG Recordings, Inc. ("UMG") respectfully submits this reply in support of its Motion to Dismiss ("Motion" or "Mot.") (ECF No. 18).

## I.   PLAINTIFFS' CLAIMS ARE TIME BARRED.

The Court does not need to look beyond the Complaint to dismiss Plaintiffs' claims as untimely.  Plaintiffs allege that UMG breached the Agreement in 2008, when UMG purportedly acquired equity in Spotify but did not account to Plaintiffs for the equity's value.  *E.g.*, Comp. ¶¶ 24, 33-44, 67-70, 84-85; Opp. at 1, 4, 7.  Because the relevant dates are clear from the complaint itself, the Court may dismiss the claims as untimely.  *See, e.g.*, *LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 442 (S.D.N.Y. 2018).  Plaintiffs' arguments to the contrary are meritless.

### A.   The Continuing Violation Doctrine Is Inapplicable.

Plaintiffs assert that their claims are timely under the continuing violation doctrine.  Opp. at 7-8.  But that doctrine applies only when a contract requires continuing performance and the defendant has engaged in successive breaches, *id.* at 442, which is not the case here.  The Agreement specifies that UMG must account to Plaintiffs semi-annually for royalties that accrued "during [the] preceding half-year."  Compl., Ex. A ¶ 8.01.  Taking Plaintiffs' allegations as true, UMG would have been required to account to Plaintiffs for the stock's value at the next semi-annual accounting period following the alleged acquisition of the stock (*i.e.*, either in September 2008 or March 2009), and would have breached the Agreement by failing to do so at that time.  Plaintiffs do not and cannot allege that UMG receives Spotify stock on an ongoing basis, or that UMG received any stock in the six years preceding the Complaint's filing.[1]

---

[1] *Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007); *Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606 (1979); *Affordable Housing Associates Inc. v. Town of Brookhaven*, 49 Misc. 3d 570, 574 (N.Y. Sup. Ct. Suffolk Cnty. 2015); and *Mullin v. WL Ross and Co. LLC*, 173 A.D.3d 520 (1st Dep't 2019) do not advance Plaintiffs' position because each involved a defendant's failure to fulfill successive payment obligations, as opposed to a failure to make a single payment due, as is the case here.  Also inapposite is *Barash v. Estate of Sperlin*, 271 A.D.2d 558 (2d Dep't 2000).  There, the plaintiff alleged the defendant's *ongoing* receipt of income and profits, and successive failures to pay plaintiff a proper percentage thereof.  *Id.* at 559.

1

Plaintiffs allege a one-time, fifteen-year-old transaction that occurred at a fixed point in time. The continuing violation doctrine is thus inapplicable. *LiveIntent*, 293 F. Supp. 3d. at 442.

Plaintiffs next argue that additional acts beyond the 2008 transaction constitute "new breach[es]" that restart the limitations period, specifically, that UMG "dilute[d]" or "depressed" their royalties and concealed that from Plaintiffs. Opp. at 7-8. But this argument is *refuted* by the Complaint, which alleges a direct connection between UMG's acquisition of Spotify stock and the purportedly "depressed" royalty payments—Plaintiffs specifically claim that UMG's alleged agreement to accept "lower royalty payments" (which were then reflected in statements rendered to Plaintiffs) was "part of the consideration for the Spotify equity [UMG] purchased" in 2008. Compl. ¶ 24.[2] Plaintiffs thus have no plausible allegations of "additional, affirmative acts" by UMG that would constitute a new breach or restart the limitations period. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must state claim that is "plausible on its face").

### B.     The Reasonable Time for Performance Doctrine Is Inapplicable.

Plaintiffs next argue that the Court must decide what constitutes a "reasonable time" for performance, which Plaintiffs contend is a factual inquiry precluding dismissal based on the Agreement's two-year limitations period. Opp. at 8-10. New York law, however, implies a reasonable time for performance only "[w]here a contract does not specify a date or time for performance," *LiveIntent*, 293 F. Supp. 3d. at 442, and here, the Agreement specifies a time for performance, Compl., Ex. A ¶ 8.01 (requiring royalty accounting in semi-annual intervals).

Notably, Plaintiffs do not dispute that the Agreement's two-year contractual limitations period is both reasonable and enforceable. Opp. at 9-10. Instead, they argue the provision is ambiguous. *Id.* Whether a contract is ambiguous is a question of law that the Court can

---

[2] *Cf. Nuss v. Sabad*, No. 10 Civ 279 (LEK) (TWD), 2016 WL 4098606, at *9 (N.D.N.Y. July 28, 2016) (alleging two distinct unlawful acts, the second of which did not logically flow from the first).

determine at the pleading stage, *see Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016), and here, there is nothing ambiguous about paragraph 8.05(a). Plaintiffs concede that paragraph applies to "any action 'in connection with any royalty accounting or payments hereunder.'" Opp. at 9. Plaintiffs' claims—which allege underpaid royalties and inaccurate accounting—fit squarely within that provision. *See* Compl. ¶¶ 38-44.

Plaintiffs argue that "[t]he Agreement's plain language does not apply to non-payments." Opp. at 9-10. But paragraph 8.05(a) applies to an action concerning "***any*** royalty accounting ***or*** payments," which, by its plain terms, encompasses disputes over UMG's alleged failure to account to Plaintiffs for royalties; indeed, *every* action for royalty payments alleges some type of ***non***-payment of what is owed. Plaintiffs' argument is nonsensical.

### C.     Equitable Tolling Is Inapplicable.

Equitable tolling applies only in "rare and exceptional circumstance[s]." *Zerilli-Edelglass v. New York City Transit Authority,* 333 F.3d 74, 80 (2d Cir. 2003); *Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 335 (2012); *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 398 (S.D.N.Y. 2016). Under New York law, the doctrine is available only when a plaintiff was "induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014). It requires that a plaintiff establish that "the defendant wrongfully concealed material facts" that prevented plaintiff's discovery of the claim, ***and*** that the plaintiff "exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Id.* The due diligence element is "essential" when the plaintiff seeks relief from the statute of limitations, *Marshall*, 51 F. Supp. 3d at 463, and the inquiry concerns "both the period of discovering [the cause of action] and the period between such discovery and filing the [complaint]," *Doyle*, 914 F. Supp. 2d at 335. Plaintiffs' invocation of the doctrine fails at every turn.

First, Plaintiffs must allege when they discovered the facts giving rise to their claims and what actions they took in pursuit of their rights between such discovery and filing their Complaint.  *See Marshall*, 51 F. Supp. 3d at 463-65; *Doyle*, 914 F. Supp. 2d at 335.  Although Plaintiffs allege a breach that occurred fifteen years ago, they concede that they have not alleged any facts showing due diligence.  Opp. at 11 n.3.  Without such facts, Plaintiffs cannot carry their burden as to equitable tolling.  *See Doyle*, 914 F. Supp. 2d at 336 (rejecting equitable tolling); *Marshall*, 51 F. Supp. 3d at 463 (same); *Zerilli-Edelglass*, 333 F.3d at 80-81 (same).

Second, Plaintiffs must allege facts showing that UMG engaged in additional, post-breach conduct that affirmatively prevented Plaintiffs from filing suit.  *See Marshall*, 51 F. Supp. 3d at 463-64 (rejecting equitable tolling where the plaintiffs did not allege misconduct distinct from the alleged breach).  Plaintiffs claim they have done so by alleging that "UMG concealed its Spotify holdings by omitting Spotify stock from its royalty statements."  Opp. at 11.  This allegation is inadequate as a matter of law.  First, the news articles submitted by UMG refute Plaintiffs' claim that UMG's alleged acquisition of Spotify stock was concealed or otherwise not publicly known.  *See* ECF No. 21, Exs. A-F.  These articles, of which the Court may properly take judicial notice, *see generally id.*, show that as far back as 2009, UMG's acquisition of Spotify stock was disclosed and made known to the public.  Second, and in any event, Plaintiffs' claim is precisely the type of allegation that is insufficient to support equitable tolling—indeed, it is nothing more than a mere restatement of their breach claim.  As the court in *Marshall* noted:

> [W]here an alleged concealment consists of nothing but the defendants' failure to disclose the wrongs they had committed, the New York Court of Appeals has held that the defendants were not estopped from asserting a statute of limitations defense.

*Marshall,* 51 F. Supp. 3d at 464 (internal quotations, citations, and brackets omitted).  In short, Plaintiffs' allegations simply do not rise to the level of affirmative misconduct required for

4

equitable tolling.[3]

## II.     PLAINTIFFS CANNOT ESTABLISH A BREACH AS A MATTER OF LAW.

Plaintiffs make a host of meritless arguments as to why the Court should ignore the Agreement's plain and unambiguous terms respecting royalties associated with licensing. The Agreement requires that royalties for such "exploitation of [Plaintiffs'] Master Recordings" be tied to "***net receipts with respect to such exploitation***[.]" Complaint, Ex. A ¶ 7.06(a) (emphasis added). "Net receipts," in turn, are defined as "amounts…which are ***solely attributable*** to [Plaintiffs'] Master Recordings". *Id.*, ¶ 7.06(b) (emphasis added). UMG's alleged acquisition of Spotify stock—which Plaintiffs do not and cannot allege was tied to ***any*** actual exploitation of their recordings, much less that the stock or any portion of it is "solely attributable" to such exploitation—does not remotely trigger any royalty obligation.

Faced with this language, Plaintiffs first mischaracterize UMG's Motion, claiming that "UMG's position is that none of its artists are owed any compensation for any Spotify streams because UMG licenses artists' work in bulk." Opp. at 15 (emphasis omitted). This claim is not only nonsensical, it is refuted by Plaintiffs' own allegations. As they acknowledge in the Complaint, Plaintiffs have received royalty statements containing "various entries for Spotify royalties earned from digital streaming." Compl. ¶ 42. There is thus no dispute that UMG compensates Plaintiffs for the exploitation of *their* work on Spotify, even where that exploitation occurred pursuant to a "bulk" license.

The question presented is not whether UMG pays Plaintiffs royalties for exploitation of

---

[3] Plaintiffs rely on *Telesco v. Neuman*, No. 14 CV 3480 (VB), 2015 WL 5474230 (S.D.N.Y. Sep. 8, 2015), but that case is readily distinguishable. In *Telesco*, the plaintiff alleged that the defendant stated several times that its fees would only be a certain percentage, while the defendant allegedly secretly charged higher fees that were not disclosed on accounting statements. *See* 2015 WL 5474230, at *4-5. Here, in contrast, there are no allegations that UMG made affirmative misrepresentations to Plaintiffs. Instead, Plaintiffs' belief as to their purported entitlement to the Spotify stock is based entirely on their unilateral, mistaken reading of the Agreement.

5

their work on Spotify (which it does), but whether royalties are owed for a benefit received from Spotify that is not directly traceable to the *exploitation* of Plaintiffs' work.  Compl., Ex. A ¶ 7.06. The answer to the latter question is no—to hold otherwise would ignore the unambiguous contractual language that royalties accrue only as to "net receipts with respect to…exploitation [of Plaintiffs' Master Recordings]," *i.e.,* amounts "solely attributable" to such exploitation.

None of the other contractual provisions that Plaintiffs cite alters this conclusion, as all of them contemplate receipt of amounts for exploitation of Plaintiffs' recordings (*i.e.*, "net receipts").  The fact that paragraph 7.06(a) contemplates royalties for "Master Recordings sold through Non-Affiliated Third Party record clubs," Opp. at 17, or "use in 'motion pictures and television soundtracks'" *id*. at 16 n.5, does not support Plaintiffs' interpretation; on the contrary, the paragraphs are perfectly consistent with the plain language of the Agreement as set forth in UMG's Motion.  In each instance, UMG is paid (and royalties accrue) for exploitation of Plaintiffs' recordings (which are "sold" or "use[d]").[4]  Nor does the fact that paragraph 7.06(a)(iv) excludes royalties for "blanket licenses to exploit PRI's Audio-Visual Recording catalog" support Plaintiffs' position, *cf.* Opp. at 17-18; while blanket licenses to exploit UMG's sound recording catalog *may* result in the payment of royalties, royalties accrue to Plaintiffs only if there are "net receipts" from such blanket licenses "with respect to . . . exploitation" of (*i.e.*, "amounts . . . solely attributable to") Plaintiffs' sound recordings. Compl., Ex. A ¶ 7.06.

Equally inapt is Plaintiffs' reliance on paragraph 7.10, which Plaintiffs argue "contains a formula for calculating net receipts if UMG includes Plaintiffs' recordings with other artists' in

---

[4] Moreover, and contrary to Plaintiffs' claim, *none* of these examples necessarily constitutes "uses where Plaintiffs' recordings are not the sole work used."  Opp. at 16.  There is no reason that records sold through record clubs or recordings licensed for uses in motion pictures or "on a flat-fee or other royalty basis" Compl. Ex. A ¶ 7.06(a), could not consist of a single artist's work.  For this additional reason, they are not probative of the meaning of the operative provisions, which contemplate royalties for exploitation "solely attributable" to Plaintiffs' sound recordings.

a license."  Opp. at 16; *see also id.* at 17.  That provision says no such thing.  Instead, it refers to "Records" (*i.e.*, the "device . . . on or by which sound may be recorded and reproduced"), and provides a mechanism for pro-rating the "royalty to be accrued" when sound recordings from various artists are included on a given Record (*e.g.*, a compilation album).  Compl., Ex. A ¶ 7.10; *id.* ¶ 13.02.  This provision does not advance Plaintiffs' argument.[5]

In sum, Plaintiffs' breach claim is wholly divorced from the terms of the Agreement.  Plaintiffs **are** receiving royalties on amounts received that are solely attributable to the exploitation of their Master Recordings, and there is nothing in the Agreement entitling them to more.  *See, e.g.*, *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 570–71 (2002) (royalty payments were not due because contract only specified royalties on certain methods of exploitation); *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 245–48, 252 (2014) (music company was not required to account for royalties not specified in contract).  Plaintiffs' breach of contract claim fails as a matter of law and should be dismissed.

## III.    PLAINTIFFS' IMPLIED COVENANT CLAIM FAILS.

Plaintiffs' opposition respecting their implied covenant of good faith and fair dealing claim ignores the relevant question:  whether Plaintiffs can maintain an implied covenant claim that is coextensive with their breach claim.  *See* Mot. at 13-15.  The answer is no.  *E.g.*, *ARI & Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) ("'New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.'");

---

[5] Plaintiffs' corollary argument—that the phrase "'solely attributable' in the definition of 'net receipts' in Paragraph 7.06(b) does not refer to *whether* royalties are owed but instead *how* royalties are calculated when multiple artists' records are combined," Opp. at 16-17—fares no better.  Paragraph 7.06(b) makes *no* reference to "multiple artists" or any related consideration (*e.g.*, pro-rating), but *does* pertain to "whether" royalties are owed, stating that royalties "accrue" on amounts "solely attributable" to the exploitation of Plaintiffs' recordings.  Compl., Ex. A ¶ 7.06.

*Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 122, 131–132 (S.D.N.Y. 2015) (dismissing breach of contract claim for alleged underpayment of royalties as unsupported by contract and implied covenant claim as duplicative of breach claim).

Although Plaintiffs suggest their implied covenant claim is distinct from their breach claim, both claims assert that UMG breached by making an undisclosed decision to license its catalog to Spotify in exchange for equity and lower royalty payments, which Plaintiffs claim was contrary to their reasonable expectations and caused them damages. *See, e.g.*, Compl. ¶¶ 65-72, 75-81. The same fundamental allegations thus underlie *both* Plaintiffs' breach and implied covenant claims, rendering the latter duplicative. Mot. at 13-15. Plaintiffs make no argument that their implied covenant claim seeks relief that is different from their breach claim, which is yet another basis for dismissal. *See generally* Opp. at 19-20; *ARI & Co.*, 273 F. Supp. 2d at 522.

Plaintiffs rely on a series of inapposite cases involving energy rates in which the defendant utilities allegedly breached the implied covenant by charging exorbitant prices above prevailing market rates, and otherwise engaged in price gouging. *See* Opp. at 19-20 (citing cases). In these cases, the implied covenant claims survived because the plaintiffs alleged arbitrary conduct (*i.e.*, price gouging) beyond a violation of the terms of the underlying contracts. There are no similar allegations here. Plaintiffs fail to allege conduct that is distinct from the conduct they claim constitutes a breach of contract, and also fail to allege any facts showing how such conduct is arbitrary or unreasonable. *See, e.g.*, Compl. ¶¶ 65-72, 75-81.

Plaintiffs then assert that their implied covenant claim does not contravene UMG's contractual rights, Opp. at 21-22, but do not explain how their theory of UMG's implied obligations can coexist with UMG's express discretionary rights. Plaintiffs do not dispute that the Agreement grants UMG "sole" and "unlimited" discretion to make all decisions concerning

the "method, manner, and extent" of exploitation, including as to licensing.  *See generally id.*;

Compl. Ex. A ¶¶ 5.01(a), 14,03(a).  They nonetheless contend that UMG violated the implied

covenant because it allegedly exceeded "the bounds of its discretion" by "making an undisclosed

licensing deal in exchange for Spotify stock" and not paying Plaintiffs for the stocks' value.

Opp. at 21-22.  If, as Plaintiffs suggest, UMG's implied obligations prohibit it from (1) deciding

to enter into a licensing deal, (2) not disclosing that decision to Plaintiffs, and (3) accepting non-

cash consideration for that deal, then UMG's express rights in paragraphs 5.01(a) and 14.03(a)

have no force or effect.  The implied covenant cannot negate express rights.  Mot. at 15-17.

## IV.   **PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS.**

Plaintiffs contend that a recent summary order from the Second Circuit, *Axon v. Florida's

Natural Grower's, Inc.*, 813 F. App'x 701 (2d Cir. 2020), allows their unjust enrichment claim to

survive.  Not so.  In *Axon*, the Second Circuit *affirmed* dismissal of a duplicative unjust

enrichment claim, *id.* at 706, and post-*Axon*, courts in this circuit have routinely dismissed unjust

enrichment claims where, as here, the parties have a valid contract and there are no allegations

that the plaintiff's claims are outside the scope of that contract, *see, e.g.*, Mot. at 17-18

(collecting cases); *cf. Empire Fire and Marine Ins. Co. v. Edge Auto, Inc.*, No. 21-CV-5413

(RPK)(PK), 2022 WL 17779117, at *5 (E.D.N.Y. Sep. 15, 2022) (denying default judgment on

unjust enrichment claim where the parties had written contracts that governed the plaintiff's

claims).  Plaintiffs' reliance on *McTyere v. Apple, Inc.*, No. 21 Civ 1133 (LJV), 2023 WL

2585888 (W.D.N.Y. Mar. 21, 2023) is likewise misplaced; there was no breach of contract claim

and the court thus did not address whether the unjust enrichment claim was coextensive with a

breach claim.  *Id.* at *1, *7.

Plaintiffs also suggest that the parties' dispute "highlights that the 'validity or scope' of

the Agreement is at issue," Opp. at 24.  However, Plaintiffs *concede* the validity of the

9

Agreement, Compl. ¶¶ 65, 75, which distinguishes the cases they cite, *cf. Dervan v. Gordian Grp. LLC*, No. 16 Civ. 1694 (AJN), 2017 WL 819494 (S.D.N.Y. Feb. 28, 2017) (disputing contract validity); *Vertex Constr. Corp. v. T.F.J. Fitness LLC*, No. 10 Civ. 683 (CBA) (ALC), 2011 WL 5884209 (E.D.N.Y. Nov. 23, 2011) (same).  Moreover, Plaintiffs' unjust enrichment claim is based on underpaid royalties, Compl. ¶¶ 83-86, and therefore falls squarely within the Agreement's scope.  Although Plaintiffs dispute how the Agreement's royalty provisions should be *interpreted* (a determination that the Court can make as a matter of law, *see* Mot. at 11-12), they do not dispute that the Agreement covers UMG's royalty obligations.  *Cf. P&G Auditors & Consultants, LLC v. Mega Int'l Comm. Bank Co., Ltd.*, No. 18 Civ. 9232 (JPO), 2019 WL 4805862 (S.D.N.Y. Sept. 30, 2019) (disputing whether particular work was within contract's scope); *U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 266-67 (S.D.N.Y. 2017) (declining to dismiss the unjust enrichment claim where contract's scope was unclear).

## V.     PLAINTIFFS' CLAIMS ARE NOT RIPE.

Plaintiffs argue that UMG's ripeness argument should be rejected because it "addresses the wrong scenario," *i.e.*, failure to liquidate its Spotify stock and distribute the proceeds, instead of failure to account for and compensate Plaintiffs for the value of the stock.  Opp. at 24.  But it is *Plaintiffs* that are confusing their breach theories.  Although Plaintiffs allege one theory of liability stemming from UMG's purported failure to account for and compensate Plaintiffs for the Spotify stock when UMG acquired it in 2008, *see* Compl. ¶¶ 39-42, UMG's ripeness argument addresses Plaintiffs' *other* theory of liability, namely, that UMG breached by failing to liquidate the stock and distribute the value to Plaintiffs following Spotify's 2018 IPO, *i.e.*, when the "Spotify stock became easily valued and transferable in the open market," *id.* ¶ 43; *see also* Mot. at 19-21.  The Opposition ignores this distinction, and thus its arguments are simply not responsive to the Motion.

Dated:  New York, New York        SIDLEY AUSTIN LLP
        April 21, 2023

By: _/s/ Ariel Atlas_
     Ariel Atlas
     aatlas@sidley.com
     787 Seventh Avenue
     New York, NY 10019
     Telephone: (212) 839-5300
     Facsimile: (212) 839-5599

     Rollin A. Ransom (admitted *Pro Hac Vice*)
     rransom@sidley.com
     Lisa Gilford (admitted *Pro Hac Vice*)
     lgilford@sidley.com
     Lauren M. De Lilly (admitted *Pro Hac Vice*)
     ldelilly@sidley.com
     555 West Fifth Street, Suite 40000
     Los Angeles, CA  90013
     Telephone: (213) 896-6000
     Facsimile: (213) 896-6600

     *Attorneys for Defendant UMG Recordings, Inc.*