# Wittels McInturff Palikovic

October 16, 2023

**Via ECF**
The Hon. Jennifer L. Rochon
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

Re:     *Titus et al. v. UMG Recordings, Inc.*, No. 23 Civ. 15 (JLR)

> The request for a discovery conference is GRANTED. IT IS HEREBY ORDERED that the parties shall appear for a video conference, via Microsoft Teams, on **October 25, 2023** at 11:30 a.m. Counsel will receive login credentials at the email addresses on the docket. The public listen-only line may be accessed by dialing Toll-Free Number: 877-336-1831 | Access Code: 5583342.
>
> SO ORDERED.
>
> Dated: October 20, 2023
> New York, New York
>
> *Jennifer Rochon*
> **JENNIFER L. ROCHON**
> **United States District Judge**

Dear Judge Rochon:

We write on behalf of Plaintiffs and the proposed Class pursuant to Your Honor's Individual Rule 2.E and Local Civil Rule 37.2 to request a discovery conference on Defendant's refusal to identify and memorialize its objections and responses to Plaintiffs' written discovery requests.[1]

### A. Overview of the Claims at Issue in This Litigation

This class action arises from UMG Recordings, Inc.'s ("UMG" or "Defendant") breach of its recording contracts with artists like Plaintiffs. Class Action Compl. ¶ 1, ECF 1. In UMG's standardized recording contract, artists assign the copyright in their sound recordings to UMG in exchange for royalty payments. *Id.* UMG then markets and distributes artists' recordings and is contractually required to account to its artists for royalties owed. *Id.*

Here, UMG licensed its artists' recordings to the Spotify music streaming service in exchange for Spotify stock and lower royalty payments. *Id.* ¶ 2. Under this arrangement, instead of paying artists their full royalty payments, UMG made smaller payments and held onto the Spotify stock that contractually belongs to UMG's artists. *Id.* UMG's ongoing conduct breaches UMG's recording contracts in two independent ways. First, UMG breached the contracts' royalty provisions by licensing its catalog for Spotify stock and lower cash royalties and then, rather than compensating artists for the stock's value, retained 100% of the stock for its own benefit. *Id.* ¶¶ 38, 42. UMG further breached the contracts' accounting provision by intentionally omitting any mention of Spotify stock from Plaintiffs' royalty statements. *Id.* ¶¶ 38, 44, 47. As a result, UMG has retained an estimated $750 million in royalties that should have been paid to artists. *Id.* ¶ 46.

### B. Background Relevant to UMG's Refusal to Identify Its Positions on Discovery

Plaintiffs filed this case on January 4, 2023, and UMG moved to dismiss on February 27, 2023. ECF 18. UMG's motion was fully briefed on April 21, 2023, ECF 23, 26–27, and remains *sub judice*. Instead of litigating the question of whether discovery should be stayed during the pendency of UMG's motion to dismiss, on March 10, 2023 lead defense counsel Rollin Ransom

---

[1] In accordance with Your Honor's Individual Rule 2.E, the parties met and conferred on the issues raised in this application and were unable to resolve the dispute. Plaintiffs' counsel informed defense counsel of the parties' impasse, both during a meet and confer and in subsequent written correspondence.

and the undersigned held a telephonic meet and confer where the parties reached a compromise. The parties agreed to engage in preliminary discovery planning and negotiations over the scope of permissible discovery while staying document productions, depositions, and third-party discovery. Specifically, the parties agreed to meet and confer on the Rule 26(f) discovery planning topics, negotiate a protective order, negotiate an ESI protocol, serve written discovery and "meet and confer regarding the scope of discovery in advance of the parties' Rule 26(f) conference with respect to *any* written discovery requests transmitted with the goal of promptly *identifying* and resolving *any* disputes regarding the scope of discovery." ECF 25 at 2 (emphasis added).

This compromise was memorialized in the parties' March 21, 2023 joint application to adjourn the Initial Pretrial Conference, ECF 24, which the Court endorsed the next day, ECF 25. Notably, in drafting the compromise language Plaintiffs specifically rejected UMG's proposal that the parties confer "generally" regarding the scope of discovery, and instead insisted that the "goal" of the parties' discussions be first to "identify" any party differences on the written discovery requests. *See* March 20, 2023 Redline from J. Burkett McInturff to Rollin Ransom attached as **Ex. A**. These redlines were accepted by UMG and filed by defense counsel at ECF 24.

Thereafter the parties began initial discovery planning, including a discussion of the Rule 26(f) topics, exchanging protective order and ESI protocol drafts, and on August 10, 2023, Plaintiffs served their First Set of Requests for Production of Documents (the "Requests"). **Ex. B**. The parties then met and conferred on the Requests on September 19 and 21, followed by a letter from Plaintiffs on October 4, **Ex. C**, and an October 10 response from UMG, **Ex. D**.

Critically, both before and during the conferral process defense counsel steadfastly refused to memorialize its positions on the Requests. Instead, defense counsel insisted the parties discuss only the "broad strokes" of discovery and that defense counsel would provide only "broad commentary" regarding the Requests. Ex. C at 2. UMG's reason? Because ECF 25 states that "formal" written responses and objections to the Requests (which would trigger UMG's obligation under Rule 34(b)(2)(B) to begin producing documents) are not required until after the motion to dismiss is decided. ECF 25 at 2. Seeking to simply understand UMG's position as to what categories of discovery UMG was and was not going to produce in response to each of the Requests, Plaintiffs then attempted to: (1) secure UMG's agreement to use an alternate format—like the Sedona Conference's model RFP chart—to memorialize UMG's position on each specific request; or at minimum (2) elicit defense counsel's responses and objections to each Request on an oral basis. Ex. C at 9. Defense counsel refused on both counts.

Instead, defense counsel condescendingly suggested that Plaintiffs "take good notes" while counsel provided their "broad commentary" on the Requests. *Id.* Plaintiffs disagreed, because if UMG does not identify what categories of responsive discovery it is or is not willing to produce in response to each specific Request, the parties will not be able to "promptly identify[] and resolv[e] any disputes regarding the scope of discovery." ECF No. 25.

Worse, during the meet and confers, defense counsel was unprepared, lacked a basic understanding of the Requests, and labeled Plaintiffs' efforts at identifying what categories of discovery UMG was refusing to produce as "busy work." Ex. C at 4. For example, one of defense counsel's "broad reactions" to the Requests were that they lacked a time limitation when in fact, Instruction No. 1 to the Requests sets a default time limitation as January 1, 2007. Ex. B at 7. Similarly, defense

counsel contended that specific requests for documents regarding royalty statements (RFP Nos. 65–68) were overbroad because they were not limited to "Spotify royalty practices." Ex. C at 6. However, even a cursory glance at the Requests reveals that ***all of those requests*** are expressly cabined to UMG's Spotify royalty practices. Ex. B at 21–22. This lack of preparation made it impossible to have productive discussions about the scope of the Requests, vitiating UMG's agreement to strive to "identify[] and resolv[e] any disputes regarding the scope of discovery." ECF 25.

Rather than disclosing its positions on each Request and then working with Plaintiffs to identify and resolve any outstanding disputes regarding the scope of discovery, UMG has caused a dispute about its obligation to disclose its positions.

### C. Defendant Must Provide Its Position Regarding Each Request

Considering the delay caused by UMG's refusal to engage, Plaintiffs ask that the Court enter an Order either: (1) requiring UMG to provide written responses and objections to each of the Requests within two weeks; or (2) issue a new Notice of Initial Pretrial Conference and schedule the Initial Pretrial Conference for the next available date.

The parties' letter agreement makes clear that the "goal" of their meet and confer on written discovery was to "promptly identify" and come to agreement or narrow discovery disputes. ECF 25. This can only happen if UMG provides its position on each Request. However, UMG violated this agreement because it claimed that it did not need to take a position on each Request, and attended the meet and confers without an adequate understanding of the Requests.

It is impossible to identify and narrow disputes when the responding party conceals its position. As Judge Peck's 2017 "discovery wake-up call to the Bar in this District," emphasized, the purpose of the 2015 amendments to Rule 34 were to "end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld." *Fischer v. Forrest*, No. 14 Civ. 1304 (PAE) (AJP), 2017 WL 773694, at *2 (S.D.N.Y. Feb. 28, 2017). Under the amended rule, the producing party "need[s] to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." *Id.*

That is exactly what is lacking here. Instead of simply providing its position with clarity, UMG is preventing the parties from identifying their differences about the scope of discovery.

Thank you for the Court's consideration of this request.

Respectfully Submitted,

/s/ J. Burkett McInturff
    J. Burkett McInturff

*Counsel for Plaintiffs and the Proposed Class*

cc: All Counsel of Record (*via ECF*)